## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**NANCY MARIE DANIELS**,<br><br>Debtor. | Case No. **10-60842-13** |
| **NANCY MARIE DANIELS**,<br><br>Plaintiff.<br><br>-vs-<br><br>**BANK ONE**, **EDUCATIONAL RESOURCE INST.**, and **NATIONAL COLLEGIATE TRUST**,<br><br>Defendants. | Adv No. **10-00044** |

## MEMORANDUM of DECISION

At Butte in said District this 15th day of September, 2010.

The Debtor/Plaintiff, Nancy Marie Daniels ("Nancy") filed a voluntary Chapter 13 bankruptcy petition on April 16, 2010. Nancy filed a Complaint on May 10, 2010, seeking to discharge a student loan debt under 11 U.S.C. § 523(a)(8). Defendants The Educational Institute, Inc. and National Collegiate Trust filed an Answer to Nancy's Complaint on June 10, 2010. Following a scheduling conference held July 7, 2010, the Court entered a scheduling order setting trial for September 13, 2010. The Court's scheduling order also directed that the parties file their exhibit and witness lists on or before September 3, 2010. The scheduling order also

1

y

provided:

> A pretrial order shall be filed with the Court on or before **September 3, 2010.** Plaintiffs' counsel shall be responsible for preparing the pretrial order and arranging the meeting of counsel attendant thereto.

Nancy's counsel timely filed Nancy's exhibit and witness lists on September 3, 2010, but filed said lists in Debtor's main bankruptcy case rather than this Adversary Proceeding. Nancy's counsel did not file a pretrial order as directed by the Court.[1] The Defendants tardily filed their exhibit and witness lists on September 9, 2010, but counsel explained that after hearing nothing from Nancy's counsel, he assumed, as did this Court, that Nancy was not going forward with this matter. Nancy was represented at the trial by Daniel R. Sweeney of Butte, Montana. Defendants The Educational Institute, Inc. and National Collegiate Trust were represented at the trial by Christian T. Nygren of Missoula, Montana. Nancy testified and Nancy's Exhibit 1 and the Defendants' Exhibits A through F were admitted into evidence without objection. At the conclusion of the trial, the Court took the matter under advisement. The matter is ready for decision. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

## FACTS

Nancy resides in Anaconda, Montana. Nancy has no dependents, but has at least one daughter. Nancy is employed as a nurse at the Warm Springs State Hospital. Nancy is currently 54 years of age but will turn 55 this month. On Schedule I, Nancy lists her monthly net income as $2,373.64. On Schedule J, Nancy lists her monthly expenses as $2,207.34, which amount

---

[1] This Court has dismissed other adversary proceedings for a plaintiff's failure to file a pretrial order.

includes a monthly mortgage payment of $605.34.

Nancy's daughter attended college in Montana. Nancy co-signed for her daughter's student loans. Nancy's obligations as a co-signor on her daughter's student loans are the obligations at issue in this Adversary Proceeding. Nancy testified that her daughter graduated from college and is employed. Nancy also testified that her daughter likes to travel and shop, and routinely does so.

Nancy was hospitalized in June because of a mental break down. Nancy also stated that she has thyroid and stomach problems, but did not elaborate. Nancy's doctors have cleared Nancy to return to work. Prior to her mental break down, Nancy was being treated by a nurse practitioner. On June 15, 2009, the nurse practitioner wrote on a prescription pad that "due to medical issues, it is inadvisable for Nancy to work overtime." Nancy explained that the nurse practitioner wrote the brief note in case Nancy's employer would seek to require Nancy to work overtime.

Nancy has received various collection notices from her daughter's student loan lenders. Nancy telephoned one of the telephone numbers on a collection notice and was advised that the student loan lender would accept roughly $18,000 on an outstanding obligation of $26,000. Nancy made attempts to contact the other lenders through the numbers listed on collection notices to no avail. Nancy has not explored any income-contingent repayment plans. Nancy's daughter's student loans total roughly $99,000.

## APPLICABLE LAW and DISCUSSION

This Adversary Proceeding is interesting because Nancy filed a Chapter 13 bankruptcy and Nancy is not scheduled to complete her plan payments until 2015. While some courts have

held that dischargeability determinations cannot be made prior to completion of plan payments, the Ninth Circuit Court of Appeals has held "that an undue hardship determination can be ripe substantially in advance of plan completion." *Educational Credit Management Corporation v. Coleman (In re Coleman)*, 560 F.3d 1000, 1008-09 (9th Cir. 2009). Similarly, Nancy obviously concedes that the debt on which she is co-obligated is an educational loan within the meaning of the Bankruptcy Code and that the statutory exception to discharge applies to the obligation of nonstudent co-obligors as well as to student borrowers. *See In re Pelkowski*, 990 F2d 737 (3rd Cir. 1993).

The discharge of student loan obligations is governed by 11 U.S.C. § 523(a)(8), which provides in relevant part after amendments made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) ("BAPCPA"), effective October 17, 2005:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
>> (8) unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for –
>>
>>> (A)(i) an educational benefit overpayment or loan made,
>>>
>>> insured, or guaranteed by a governmental unit,
>>> or made under any program funded in whole or
>>> in part by a governmental unit or nonprofit
>>> institution; or
>>>
>>> (ii) an obligation to repay funds received as an
>>> educational benefit, scholarship, or stipend; or
>>
>> (B) any other educational loan that is a qualified educational
>> loan, as defined in section 221(d)(1) of the Internal Revenue
>> Code of 1986, incurred by a debtor who is an individual[.]

The Bankruptcy Code does not define "undue hardship." Courts have held, however, that

Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr. N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. D. Kan. 1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr. R.I. 1987). As the court in *Brown* noted:

> Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. On the other hand, the Bankruptcy Code does not require that the debtor "live in abject poverty . . . before a student loan may be discharged." *In re Mallinckrodt*, 260 B.R. 892, 900 (Bankr. S.D. Fla. 2001) (*quoting In re Faish*, 72 F.3d 298, 305 (3rd Cir. 1995)).

In a complaint to determine the dischargeability of student loan debt, a debtor has the burden of proof to show evidence of undue hardship sufficient to discharge the debt. *Educational Credit Management Corporation v. Mason (In re Mason)*, 464 F.3d 878, 881 (9th Cir. 2006); *In re Rifino*, 245 F.3d 1083, 1087-88 (9th Cir. 2001); *In re Pederson*, 18 Mont. B.R. 429, 434 (Bankr. D. Mont. 2000), *In re Thomsen*, 17 Mont. 493, 499, 234 B.R. 506, 510 (Bankr. D. Mont. 1999).

Courts in the Ninth Circuit uses a three-part test to determine whether the non-discharge of student-loan debt would cause an undue hardship. The debtor must show: (1) that he or she cannot maintain, based on current income and expenses, a "minimal" standard of living for himself or herself if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good-faith efforts to repay the loans. *United*

*Student Aid Funds, Inc. v. Pena*, 155 F.3d 1108, 1111 (9th Cir.1998) (citing *In re Brunner*, 831 F.2d 395, 396 (2d. Cir.1987)).

As set forth above, the *Brunner* test starts with an examination of whether the debtor can maintain a minimal standard of living and still repay her student loan obligations. *Mason*, 464 F.3d at 882; *Rifino*, 245 F.3d at 1088. To satisfy the first prong, a debtor must demonstrate more than simply tight finances. *Rifino*, 245 F.3d at 1088; *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999). In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id.*; *see Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3rd Cir. 1996) ("[T]he Bankruptcy Code does not require that the debtor "live in abject poverty . . . before a student loan may be discharged."). In the case *sub judice*, Nancy has shown nothing more than tight finances.

Moreover, to discharge student loan obligations, debtors must show the existence of additional circumstances indicating that the debtor's state of affairs is likely to persist for a significant portion of the repayment period. "[T]he burden is on the debtor to provide the court with additional circumstances, i.e., 'circumstances beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period. The circumstances need be 'exceptional' only in the sense that they demonstrate insurmountable barriers to the debtors' financial recovery and ability to pay.'" *Educational Credit Management Corporation v. Nys (In re Nys)*, 446 F.3d 938, 946 (9th Cir. 2006). "The factors a court may consider include, but are not limited to: (1) [s]erious mental or physical disability of the debtor which prevents employment or advancement; (2) obligations to care for dependents; (3) lack of or severely limited education; (4) poor quality of education; (5) lack of usable or marketable job

6

skills; (6) underemployment; (7) maximized income potential in the chosen educational field; (8) limited number of years left in the debtor's work life to allow repayment of the loans; (9) age or other factors that prevent retraining or relocating; (10) lack of assets, exempt or not; (11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets or increases in the debtor's income; and (12) lack of other better financial options elsewhere. *Id.*, 946-47.

In this case, Nancy testified that she suffered a mental breakdown in June of this year, but that breakdown does not now preclude Nancy from returning to work. Nancy offered no evidence to suggest that she is precluded from advancement at her job. Nancy does not have to care for any dependents. Nancy offered no evidence regarding a lack of education or the quality of her education. Nancy clearly has marketable job skills as demonstrated by the fact that she is an employed nurse. The record is devoid of any evidence suggesting that Nancy is underemployed. Evidence suggests that Nancy may have maximized her income potential in her chosen educational field and Nancy testified that she hopes to retire at age 62, which is only seven years from now. Nancy offered no evidence of other factors that prevent retraining or relocating. Debtor owns a home and offered no other evidence as to a lack of assets, exempt or otherwise. Finally, Nancy does not contend that her expenses are increasing. In sum, Nancy offered little to no evidence as to additional circumstances that would warrant discharging her obligation to pay her daughter's student loans.

As to factor three, a debtor must show that she has made a good faith effort to repay the loan. This Court, in cases deciding whether excepting student loans from discharge would impose an undue hardship under 11 U.S.C. § 523(a)(8), has noted that federal regulations, 34

C.F.R. § 685.209, provide for an income contingent repayment plan known as the "William D. Ford Program," ("Ford Program"), where unpaid portions of loans are cancelled after 25 years. *See In re Hamilton,* 361 B.R. 532, 552 n.20 (Bankr. D. Mont. 2007); *In re Hutchison*, 296 B.R. 819, 826 (Bankr. D. Mont. 2003).

The skeletal record in the instant case contains no evidence that Nancy was aware of or has applied for the Ford Program or whether the program is even available to a co-obligor. Since the Debtor is the party with the burden of proof, the lack of evidence regarding Debtor's utilization of the Ford Program as a remedy weighs against discharge of the student loan obligation.

After consideration of the bare facts and applicable law, this Court cannot conclude that repayment of her daughter's student loans will impose an undue hardship upon Nancy. For the reasons discussed herein, the Court will enter a separate judgment as follows:

IT IS ORDERED and ADJUDGED that Judgment is entered in favor of the Defendants The Educational Institute, Inc. and National Collegiate Trust and against the Plaintiff, Nancy Marie Daniels; and the Plaintiff's Complaint is DISMISSED with prejudice.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana